**Walter Lee BROWN, Petitioner,**

v.

**W. J. ESTELLE, Director, TDC, Respondent.**

**Civ. A. No. CA–3–77–0905–D.**

United States District Court, N. D. Texas, Dallas Division.

July 7, 1978.

Walter Lee Brown, pro se.

Joe Dibrell, Asst. Atty. Gen., Chief Enforcement Div., Austin, Tex., for respondent.

## MEMORANDUM OPINION AND ORDER

ROBERT M. HILL, District Judge.

Walter Lee Brown, petitioner, is presently in custody of respondent pursuant to a sentence of 25 years imprisonment imposed against him in the 195th Judicial District Court, Dallas, Texas, in Cause C–74–8736–IN. Petitioner's conviction was affirmed on direct appeal. *Brown v. State*, 535 S.W.2d 640 (Tex.Cr.App.1976). Petitioner presents two complaints in his application for Writ of Habeas Corpus relief now before this court. Each of these complaints was presented and ruled on adversely to petitioner in his direct state appeal. He has not sought post-conviction relief in the state courts. He has exhausted his state remedies.

Petitioner advances the complaints (1) that the conviction used for enhancement purposes in his state trial was invalid and (2) that the prosecutor indulged in improper jury argument to the extent that his trial was rendered fundamentally unfair.

■ As to petitioner's first complaint, he advances no factual grounds which would support a conclusion that the conviction used for enhancement purposes in his trial was invalid. He alleges in his petition for Habeas Corpus that "proper stipulations were not entered in accordance with the law." This complaint and the factual allegations advanced to support it are insufficient to raise any issue in this court. A review of the opinion of the Court of Criminal Appeals discloses that petitioner did present a complaint to that court apparently seeking to show that certain evidence was orally stipulated rather than entered by a written stipulation pursuant to the provisions of Article 1.15, V.A.C.C.P. The court overruled his complaint. There is no requirement under the Constitution or laws of the United States that stipulated evidence must be in writing and this complaint, even if true, would advance no grounds on which relief might be properly granted in this court.

As to petitioner's second complaint, this court is of the opinion that there has been a showing of constitutional error due to the improper jury argument of the state prosecutor and for this reason his conviction should be vacated. In his petition for Habeas Corpus relief petitioner sets out several instances in which he feels the prosecutor committed improper arguments. Some of these instances occurred during the guilt phase of petitioner's trial and this court is of the opinion that the prosecutor's argument complained of during this phase of petitioner's trial was not so egregious as to deprive him of a fair trial. However, petitioner's complaints are also leveled at the prosecutor's argument during the punishment phase of his trial and the court is of the opinion that the arguments during this phase of the trial was so egregious as to have deprived petitioner of a fair trial.

Before improper jury argument can be a basis for Habeas Corpus relief under 28 U.S.C. § 2254 such argument must be "so prejudicial that the applicant's state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *Donnelly v. DeCristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Alvarez v. Estelle,* 531 F.2d 1319, 1323 (5th Cir. 1976). Each case must be decided on the facts particular to it and the challenged remarks must be evaluated in the context of the entire trial. In determining whether a state prosecutor's argument violates the limits of permissible argument so as to give rise to a due process claim, both state and federal standards over the conduct of a prosecutor's argument will be looked to for guidance. *Houston v. Estelle,* 569 F.2d 372 (5th Cir. 1978). Whether or not compelled to do so as a federal constitutional matter, Texas applies the rule that argument be limited to the evidence and reasonable inferences from it as strictly in the punishment phase of the trial as in the guilt phase. *Houston v. Estelle, supra.* Likewise, the federal rule requires that jury summations be structured to assist the jury to analyze, evaluate and apply the evidence. They may not contain the attorney's own opinion about the merits of the case or any extrinsic matter having no basis in the evidence. *United States v. Morris,* 568 F.2d 396, 401 (5th Cir. 1978).

In his complaint relating to the prosecutor's jury argument the petitioner sets out ten specific instances where he feels the prosecutor committed error in his argument. These were also raised on petitioner's direct appeal from his conviction. The Court of Criminal Appeals held that in those instances where an objection to the argument was sustained no error was shown. In three instances where petitioner's objection was overruled no reversible error was found. In his complaint in his state appeal petitioner also contended that the prosecutor's conduct throughout the trial denied him a fair trial and due process. The Court of Criminal Appeals did not write on this contention, but found no error

in the prosecutor's argument. Petitioner also raises this same point in his complaint in his habeas corpus complaint in this case. The court is of the opinion that petitioner has exhausted his state remedies as to the ten specific instances alleged in his complaint in this court and as to his complaint that overall the prosecutor's argument deprived him of a fair trial and due process of law. The State does not deny in any regard that petitioner has failed to exhaust his state remedies.

A review of the prosecutor's argument during the punishment phase of the trial clearly indicates that he continuously injected extrinsic matters into his argument and repeatedly gave the jury his own personal opinions and that of the District Attorney and the community in general. All too frequently after an objection to his argument was sustained he would flagrantly repeat the objectionable argument, causing the petitioner's attorney on some occasions to object. On other occasions no objection was made in the fear, perhaps, that to do so would only emphasize the improper remarks or prejudice his client in the eyes of the jury by over objecting.

The prosecutor commenced his argument by injecting extra-record evidence by advising the jury that he and defense counsel had been in law school together and were involved in student bar activities. He advised the jury of his fondness for defense counsel and that at times they shared differences of opinion. (Tr. 132) The court sustained an objection to these comments but gave no instruction to the jury. Immediately after this objectionable argument the prosecutor advised the jury "We're not trying the Defendant's attorney for anything that he did." (Tr. 133). This statement coupled with the prosecutor's statements of his long and close acquaintance with defense counsel implied that the prosecutor's special knowledge of the defense counsel's past was such that his conduct was not above reproach. Neither of these comments was proper. The prosecutor's comments on the same subject after the court had sustained an objection was to set

the pattern for his conduct throughout his latter argument.

Thereafter the prosecutor frequently referred in his argument to his relationship with Mr. Wade, the District Attorney, and the District Attorney's recommendation as to the proper sentence in this case. The prosecutor argued that Mr. Wade wanted him to be a vigorous prosecutor (Tr. 133) and that his recommendation as to the sentence to be imposed on the petitioner came from "our office . . . from the District Attorney's Office." (Tr. 148) He then told the jury that they had elected Mr. Wade and as their representative he (Wade) was making an appeal for strong law enforcement (Tr. 148). The prosecutor referred to the fact that Mr. Wade did not ask him to be a vigorous prosecutor or lackadaisical prosecutor who reduces cases. (Tr. 151). The court sustained an objection to this last argument and instructed the jury to disregard it. Continuing, the prosecutor stated "that any armed robbery deserves at least twenty five years," which was objected to as expressing the prosecutor's feeling. The objection was sustained and the prosecutor instructed by the court not to state his personal opinion. He then continued his argument by stating "I'm just giving you your District Attorney's Office recommendation in this case. It is the considered recommendation of our office that you sentence this man . . . I stress the word 'sentence' . . . to not less than a thirty year sentence in this particular case." (Tr. 149–50). The prosecutor's argument injecting what purported to be Mr. Wade's and his office's recommendation as to the recommended sentence, was clearly outside the record and prejudicial error. Continuing with his practice of violating the court's ruling, after the court instructed the prosecution not to inject his personal opinion as to a sentence, he argued what the opinion was of the District Attorney's Office as to a proper sentence. Since he was a member of that office he was, in effect, again arguing his personal opinions as to a sentence. A prosecutor is prohibited from injecting his own personal opinions in a case, much less the opinions of his superiors and others. *United States v. Morris, supra; Fowler v. State,* 500 S.W.2d 643 (Tex.Cr.App.—1973).

The prosecutor made reference to his family and their involvement in this case and how they could be affected by the punishment that the jury assessed. Early in his argument the prosecutor stated that "as prosecutor I can't help but get involved because I am trying to raise a family and children." (Tr. 134) Although an objection was made to this argument which was sustained and the court admonished the prosecutor to stay within the record, no instruction was given to the jury. Later on, and in violation of the court's ruling, the prosecutor again referred to his family. He stated "I'm raising a family of three young boys in this community." (Tr. 151) An objection was again made and sustained by the court and then a discussion was had outside the hearing of the jury. Immediately after these events the prosecutor in direct violation of the court's two earlier rulings stated "I am simply saying that I have a job to do and I have people to represent. Those people are the people in this community, the people who are trying to raise a family in the community . . where thieving is not a way of life; where children can go up in a community where thieving is not rampant." (Tr. 152) An objection was made which was overruled. References to the prosecutor's family was wholly outside the record. The defense attorney did not invite such argument. Similar argument has been held objectionable. *Basaldua v. State,* 481 S.W.2d 851 (Tex.Cr. App.1972). (Found no reversible error because argument made in response to and invited by argument of defense counsel).

█ The prosecutor touched on several previous convictions of the petitioner which had been introduced as impeachment evidence after the defendant had testified. Some of the convictions indicated that the charges had been reduced from a felony to a misdemeanor and the petitioner had pled guilty to the lesser misdemeanor charges. The prosecutor explained to the jury that although petitioner might have pled guilty

to a misdemeanor that the state still felt that the petitioner was guilty of a felony. He stated "that the state agreed to reduce the offense to a misdemeanor doesn't mean that we thought they weren't still felonies." (Tr. 135) Again, when discussing whether petitioner had been given a second chance, the prosecutor stated that "when a felony is reduced to a misdemeanor, that's giving him another chance." (Tr. 135) Later the prosecutor eluded to petitioner's plea of guilty to a lesser charge when he stated "the only thing he's sorry about is getting caught again and he got hold of a prosecutor that's not going to let him off like some of my forefathers did." (Tr. 142) This last statement was objected to and the court sustained the objection and instructed the jury not to consider it. However, true to his character, the prosecutor immediately violated the court's ruling when he stated "you just look through these packets and you see here—right here in the packet upon written motion of the State it's reduced to a misdemeanor. Well, not this time folks." (Tr. 142). The impact of these arguments is two-fold. First, it insinuated that petitioner was actually guilty of more serious crimes in his earlier convictions and that this was a factor to be considered by the jury in deciding his present punishment. Second, the prosecutor's argument emphasized that petitioner had worked out a plea bargain in his earlier convictions which permitted him to be assessed a lighter sentence but that petitioner's efforts to plea bargain in this case had been rejected by the State because petitioner "got hold of a prosecutor that's not going to let him off like some of my forefathers did." These arguments are wholly outside the record, clear error and were prejudicial to the petitioner. *Donnelly v. DeChristoforo, supra; Hull v. U. S.,* 324 F.2d 817 (9th Cir. 1963); *Clayton v. State,* 502 S.W.2d 755 (Tex.Cr.App.1973).

■ There are other instances when the prosecutor went outside the record in his argument and where the comments were prejudicial to the petitioner. At an early stage of the argument he referred to the fact that some day he may be in private practice but "I'm not going to sit here and

do like one prosecutor did and say he never would defend somebody." (Tr. 133). It was error to inform the jury of another prosecutor's opinion and it implied that after being a prosecutor you would conclude that all defendants are guilty and not worthy of having an attorney defend them. The injection of another prosecutor's opinion was error and unduly prejudiced the petitioner's trial. *Bray v. State,* 478 S.W.2d 89 (Tex.Cr.App.1972).

■ The prosecutor also discussed the testimony of the victim of the crime with which petitioner was charged. When describing the victim's testimony about the petitioner holding a gun on him the prosecutor injected again his personal views about this testimony when he stated "I've never been through it." (Tr. 141) The prosecutor again injected his own personal beliefs and matters outside the record when discussing the defendant's motive in committing the robbery when he stated "Gosh, a lot of things I want in this world that I see and wish that I could buy and you too, I am sure, but you know you can't go stealing it because you've got this impulse that you would like to have it. That little sixty-six Volkswagon of mine is putting some miles on it, but I still keep on driving it instead of a big shiny new Cadillac . . . ." (Tr. 146) An objection interrupted the argument at this point and the court sustained the objection and the jury was instructed not to consider it. The impression which had to be left with the jury was that because he, the prosecutor, does not steal he is required to drive a small car like a Volkswagon rather than a big car like a Cadillac. Once again, in direct violation of the court's sustaining an objection to this argument, the prosecutor stated "I believe that it is in the record that's my sixty-six Volkswagon and state's exhibit 13 right there. That's in the record. I don't believe that I am out of the record. I hope not. But most important your verdict is to deter others. Deter that second group of people . . . ." (Tr. 146) This argument reemphasized again the prosecutor's point that honest people, like the prosecutor, drive small cars

and thieves, like the petitioner, drive big cars. This attempt to play off the relative financial resources of the prosecutor against those of the petitioner was wholly outside the record and prejudicial to the petitioner.

◼ The prosecutor injected matters outside the record relating to crime in the community in general and the jury's responsibility to do something about other crime in this case. Early in his argument the prosecutor stated "you have a right to voice your opinion in this community that's why you're here today. You're here because you are a registered voter in this community and wanted to voice your opinion on important matters in your community. You also are here today to voice your opinion on a very important matter. What to do with habitual thieves in our community. I hope you're sick of reading about it. I hope you're sick of hearing about it and I hope you're willing to do something about this." (Tr. 140) The prosecutor was obviously suggesting to the jury that their punishment in this case should be based on the crimes being committed by other "habitual thieves" in the community. This was error and prejudicial to this defendant. Not content, the prosecutor later on made a similar argument. He stated "We do need your help. I think it's obvious to all of you by the likes of this Defendant that we have a crisis in this community with thieves robbing in broad day-light without any compunction whatsoever. I am sure that you have thought to yourselves as you have read in the paper, 'Why don't they do something about it. The thieves are eating us up out there. Why don't they do something about it,' and I hope by now its dawned on you that the 'they', in the final analysis are you twelve people." (Tr. 147) He then called on the jury to "tell the other thieves and potential killers with loaded guns that you are not going to stand for it." (Tr. 147) He then stated "What side are you on? Are you going to coddle them or going to punish them." (Tr. 149). Again these comments urged the jury to impose a sentence on petitioner not only for what he had done but for what other thieves and criminals

were doing. Again it was error and prejudicial to the defendant.

◼ In arguing that the petitioner should have a lengthy sentence the prosecutor also went outside of the record by stating "when he returns to our society, and he will come right back here to Dallas County . . . ." (Tr. 150). This line of argument was not supported by the record and it "injected new and harmful facts into the case." Such argument was obviously prejudicial to the petitioner. *Pennington v. State,* 171 Tex.Cr.R. 130, 345 S.W.2d 527 (1961) (at guilt stage); *Hazzard v. State,* 111 Tex.Cr.R. 539, 15 S.W.2d 638, 639 (at guilt stage).

◼ Finally, the prosecutor discussed the purposes of punishment. First, he explained that one of the purposes of punishment was to punish the offender and to express society's condemnation of the act that the petitioner had committed. Second, in advising the jury that another purpose to be considered was rehabilitation of the defendant, he stated "You have to give them that flexibility that they need to work with him until he's ready to be released to society again. If you give him a light sentence you're not going to give them that flexibility." (Tr. 145) This argument on rehabilitation is highly improper because it suggested to the jury that they give the defendant a severe sentence not based on the evidence and that the jury assess a severe sentence and let someone else determine how long the defendant should serve. In *Jones v. State,* 522 S.W.2d 225 (Tex.Cr.App. 1975), an identical argument was found to be error requiring the reversal of a conviction. The court held that the argument permitted the jury to consider the matter of parole in assessing punishment which was improper, that it was an improper appeal to the jury to disregard their duty to impose a proper sentence and let the prison officials decide when to release the defendant, and that the argument misstated the law because the Board of Parole and the Governor, not prison officials, determined release on parole. Third, the prosecutor stated that

deterrence was an additional purpose in punishment. Again the prosecutor stated that the defendant would be deterred from committing other crimes "if you give them enough time to work with him and keep him down there until he gets his thinking straightened out. I don't know whether they can create a conscience in this man or not. I rather doubt it, but at least perhaps they can keep him until he's got his mind straightened out where he doesn't think he has to have something that he sees." (Tr. 145–46). The resort to the element of deterrence as a by-product of punishment might be acceptable, but again the prosecutor urged the jury to base its sentence on other than the evidence and to let the prison officials determine how long to hold the defendant to accomplish the purpose of deterring him and others who might be bent on committing a similar offense. This was error. *Jones v. State, supra.* The error was further compounded by the prosecutor expressing his personal opinion that he doubted that the prison officials could create a conscience in the defendant. An objection was made to this argument as being outside the record and it was sustained, but the prosecutor then stated to the jury that "I don't believe I'm out of the record." (Tr. 146).

■ There are instances where curative instructions by the court do not negate the prejudicial effect of argument. *Houston v. Estelle,* 569 F.2d 372, 383 (5th Cir. 1978). This is such a case. It is the court's opinion that the prosecutor's misbehavior was of such an extreme nature that any instruction to the jury could not effectively have remedied the damage. The misconduct was so pronounced and persistent that it permeated the entire atmosphere of the punishment stage of the trial. See *Berger v. U. S.,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *U. S. v. Blevins,* 555 F.2d 1236 (5th Cir. 1977).

Repeatedly the prosecutor ignored the court's ruling sustaining an objection and continued with the same argument, thereby nullifying any curative affect of the court's ruling. The court on numerous occasions following an objection directed the prosecutor to stay within the record. The prosecutor did not do so. There is very little of the prosecutor's argument that is based on the evidence or reasonable inferences therefrom. In this case the prosecutor's argument at the punishment phase was overall so error ridden and prejudicial that the instructions given by the court to the jury did not remove the taint and harm created by the argument. No amount of instructions from the court would have done so, and had the defendant objected in those instances when he did not at best his prospects for relief would only have been an instruction from the court of doubtful effect. Additionally, the defendant was constantly exposed to the prosecutor's penchant to reargue prejudicial statements after the court had sustained an objection to them, thus having them emphasized in the minds of the jury.

■ Repeated violations by the prosecutor in his argument in this case placed the defendant in the unenviable position of having to make constant and repeated objections or otherwise suffer a waiver of any claim of error. The record reflects that in an argument taking up a mere nineteen pages of the Transcript the defendant objected fifteen times to statements made by the prosecutor. On three of these occasions the defendant moved for a mistrial which was denied. The court also apparently felt that the prosecutor was consistently arguing outside the record because it held a bench conference with the prosecutor after he had violated an earlier ruling sustaining an objection to his argument. (Tr. 151) The conference was not fruitful because the prosecutor immediately violated the court's ruling again in his argument, to which the defendant again had to object. (Tr. 152). In the opinion of this court the burden placed on the defendant in the circumstances of this case to constantly have to object to the prosecutor's continuous violations in his argument so prejudiced the defendant as to justify his failure to object at every instance where an improper argument was made. Petitioner has demonstrated a

"cause and effect" in those instances where no objection was made so that federal review should not be denied. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Further, the burden to object under the circumstances of this case so prejudiced the petitioner as to cause him to suffer an unfair trial so as to deprive him of due process of law. *Houston v. Estelle, supra,* 569 F.2d at 380.

The court is of the opinion that the relief sought by petitioner should be granted and that his conviction should be set aside and that he be granted a new trial.

It is so ORDERED.