**George Arnold GIESEN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 05–84–00444–CR.**

Court of Appeals of Texas,
Dallas.

Feb. 19, 1985.

Kerry Fitzgerald, Dallas, for appellant.

Celia V. Barr, Asst. Dist. Atty., Dallas, for appellee.

Before STEPHENS, VANCE and DEVANY, JJ.

STEPHENS, Justice.

George Arnold Giesen, convicted by a jury of burglary of a habitation, and sentenced to forty years imprisonment, appeals. In eight grounds of error appellant contends: that the prosecutor committed reversible error by eliciting testimony regarding polygraph tests; that the prosecutor made impermissible comments about appellant during closing argument; that the prosecutor was allowed to argue outside the record; and that the prosecutor impermissibly attacked appellant through appellant's trial counsel. We disagree with each contention and, accordingly, affirm.

In his first ground of error, appellant contends the prosecutor erroneously elicited testimony regarding the administering of a polygraph test to the complaining witness. We disagree.

The record reflects the following testimony:

(By prosecutor) Q. When a person who comes to you as a rape victim, comes to you after the fact, that being a couple of days later, do you usually follow a certain procedure when you are investigating that particular type of rape victim's case?

A. I view it with somewhat more skepticism that I would others that would be reported instantly.

Q. If you have a skepticism do you have that rape victim do anything, that is additionally in your procedure?

A. In some instances I ask them if they would take a polygraph test.

Mr. Green: Your Honor, object to anything about a polygraph test.

The Court: Sustained.

Mr. Green: Not admissible. Instruct the jury to disregard it.

The Court: Jury is so instructed.

Mr. Green: At this time, Your Honor, I move the Court for a mistrial for mentioning the word polygraph.

The Court: Overruled.

(By prosecutor): Q. After you interviewed this witness, that is (K———— W————), did you have any doubt about what she was telling you?

A. No sir I didn't (RII–233, 234).

■■■ The witness did not testify that he felt that a polygraph test was warranted in this instance; that a polygraph test was in fact administered to the complainant; what the results of the test were, assuming one was conducted; or that he was basing his opinion of the complainant's veracity upon such a test. Although the *results* of polygraph tests are inadmissible in all cases, *Fernandez v. State*, 564 S.W.2d 771 (Tex.Crim.App.1978), in light of the nature of the offending statement in this case and the court's prompt instruction to disregard, no reversible error is shown. *Reed v. State*, 522 S.W.2d 466 (Tex.Crim. App.1975). Appellant's first ground of error is overruled.

■■■ In his second ground of error, appellant contends that P———— W————'s testimony regarding what the complainant told her the day of the offense was prejudicial and inadmissible hearsay. We disagree.

The record reflects the following:

(By prosecutor) Q. Do you recall receiving a telephone call from Ms. (W————) on Saturday, September 17, 1983?

A. Yes, sir.

Q. What did she tell you?

A. Well, she told me that she had been raped the night before—

MR. GREEN: Your Honor, I'm going to object to hearsay.

THE COURT: Sustained.

MR. GREEN: Will you instruct the Jury to disregard it, please?

THE COURT: Jury is so instructed.

Although hearsay is generally inadmissible, it is well settled that statements constituting a rape victim's complaint, her "outcry", are admissible in the State's case in chief as direct evidence of that complaint; this evidentiary rule applies without regard to the spontaneity of those statements. *King v. State*, 631 S.W.2d 486 (Tex.Crim.App. 1982). We conclude the testimony was admissible and the trial court erred in sustaining appellant's objection. Since the error benefitted appellant, appellant's complaint is without merit. Appellant's second ground of error is overruled.

■■■ In his next two grounds of error, appellant complains the prosecutor deprived him of due process and a fair trial by making the following statements during closing argument:

He said the whole thing is like he is a gladiator and he is sentenced by Caleta (phonetic), well he may be in an arena, but this guy is not a gladiator, he is one of the animals, that's what he is.

\*  \*  \*  \*  \*  \*

You know, it's a reasonable and logical deduction from his own testimony and his version of what the story is is totally preposterous, unbelievable, period. Consent, no. Look at him, look at this thing as he sits here. Do you think—

In both instances appellant's counsel's objections were sustained and the jury was instructed to disregard the prosecutor's statements, but appellant's motions for a mistrial were denied. We conclude that the prosecutor's statements were not so extreme or manifestly improper as to deny appellant a fair trial and any error was cured by the court's instruction to disregard. *Stringer v. State*, 632 S.W.2d 340 (Tex.Crim.App.1982); *Todd v. State*, 598 S.W.2d 286 (Tex.Crim.App.1980). Appellant's grounds of error three and four are overruled.

■ In his fifth ground of error, appellant contends the court erred in allowing the prosecutor to attack appellant by arguing outside the record. We disagree. The record reflects that during the State's closing argument the prosecutor stated:

He will do anything he will violate any oath that he takes on the witness stand. He will violate—

Defense counsel's objection was overruled. Appellant testified under oath that the complainant had invited him into her apartment and had engaged in sexual intercourse voluntarily. In light of the other evidence presented, it was a reasonable deduction from the evidence that appellant's testimony was untrue, and the prosecutor's comment was, therefore, proper. *Todd v. State*, 598 S.W.2d 286 (Tex.Crim. App.1980). Appellant's fifth ground of error is overruled.

■ In his sixth ground of error, appellant complains of the following statements by the prosecutor during the State's closing argument:

But what about the boy? What kind of life is he going to have. What will he think twenty years from now down the line when he thinks back and he knows that his mother was raped in his bed? By the likes of this man? What is going to happen to him, is he going to—he is seven years old—eight years old. What is he going to think? What kind of normal life can he lead when this man has violated the sanctity of his home and has robbed him of the ability to have a normal childhood and discover what sex is in a normal way and life is supposed to treat you? That's been robbed, that's been taken. That is out the window because of this man and his mother—

Defense counsel objected; his objection was sustained; and the jury was instructed to disregard the statements. We conclude that the court's instruction was sufficient to cure any error. *Stringer v. State*, 632 S.W.2d 340 (Tex.Crim.App.1982). Appellant's sixth ground of error is overruled.

■ In his final two grounds of error, appellant contends the prosecutor committed reversible error during closing argument by attacking appellant through his defense counsel. We disagree. Appellant first complains of the following statement:

(By prosecutor) I want to apologize for (sic) you too, because of the nature of this offense and the trial and the kind of testimony that you have had to hear sitting out there. Beforehand you knew only it was a burglary and that the intent involved was that committing sexual assault but in listening to the testimony yesterday although it wasn't a rape case, it was pretty much tried like one, with all of the accusations and victimizing again taking place her in front of you and I just want to—

Appellant's objection was sustained, and the jury was instructed to disregard, but his Motion for Mistrial was overruled. This statement was not a direct reference to appellant or to his counsel. We hold that the trial court's instruction was sufficient to cure any error *Anderson v. State*, 633 S.W.2d 851 (Tex.Crim.App.1982).

■ Appellant next complains of the following statement:

(By prosecutor) On behalf of Mr. Wade's office and people connected to this case, I join in the apologies offered by my co-counsel because you had to sit there and listen to a bunch of perverted facts, twisted lies and inuendos and implications not brought on by the attorneys, not brought on by the Court—

Appellant's objection was overruled. We hold that, although improper, this statement was not so extreme or manifestly improper as to constitute reversible error. Appellant's grounds of error seven and eight are overruled.

Affirmed.

DEVANY, J., dissents.

DEVANY, Justice, dissenting.

George Arnold Giesen was convicted by a jury of burglary of a habitation with intent to commit a sexual assault and sentenced to forty years imprisonment. I respectfully disagree with the majority opin-

ion overruling all of appellant's contentions and affirming the conviction. A close inspection of the trial proceedings should be offensive to anyone's sense of a fair trial. Therefore, I would reverse and remand with the trust that the appellant would receive a fair trial.

The record reflects that the complainant was a female with an eleven year old daughter and a seven year old son. She had met the appellant on several previous occasions although there is no evidence of intimacy. At the time of the alleged offense, the appellant supposedly entered the complainant's house and crawled into bed with her. The complainant was lying naked with her seven year old son in bed with her at the time. Supposedly, the complainant was awakened and discovered the strange male in bed with her. According to complainant's testimony, the appellant began having intercourse with her, but the seven year old boy woke up and the complainant then said to the appellant, "My God, you woke my son up, get out of here." At this point the appellant got up, put on his clothes and left. Complainant's reference to appellant as "George" at this point in her testimony should be noted.

The complainant's testimony further indicates that she did not report the incident to the police until several days later. When she reported it to a police officer, who testified at the trial, the officer indicated that in such instances, where there has been a delay in reporting a rape, he has some skepticism. At that point during the testimony of the officer, the prosecutor asked the police officer the following question:

Q. If you have a skepticism do you have that rape victim do anything, that is additionally in your procedure?

A. In some instances I ask them if they would take a polygraph test.

At this point defense counsel objected and his objection was sustained. He asked that the jury be instructed to disregard the reference to the polygraph test. The court responded by instructing the jury to disregard the statement. Defense counsel then moved for a mistrial, but was overruled. Following this exchange, the prosecutor then continued the questioning as follows:

Q. After you interviewed this witness, that is (K_____ W_____), did you have any doubt about what she was telling you?

A. No sir I didn't.

The reasonable inference that would be drawn by reasonable minds, which I assume the jury collectively had, was that the complainant was given a polygraph test and had passed it. In other words, the thought was instilled in the minds of the jury that although complainant had waited several days, under this strange set of facts, to report the incident, she must have been telling the truth because she convinced the police officer who used a polygraph test to quiet his skepticism. No other reasonable inference can be drawn from this testimony.

The prosecutor elicited hearsay testimony from a girlfriend of complainant which the defense attorney objected to. Once again the objection was sustained and the jury was instructed to disregard the testimony. Defense's motion for a mistrial was overruled. Again the jury received inadmissible testimony which they were instructed to disregard.

Subsequently, during the argument before the jury, the prosecutor in his closing argument stated: "He will do anything, he will violate any oath that he takes on the witness stand. He will violate ____." Again defense counsel objected, but this time the court had mixed emotions on its ruling, clearly expressed in the record. The prosecutor was obviously referring to the appellant's direct testimony under oath that the complainant had invited him into her apartment and had engaged in sexual intercourse voluntarily.

Next, the prosecutor in his closing argument talked about the seven year old boy and the impact of this rape on his life. Since the evidence did not indicate the boy was fully awake, the statements appeared clearly improper and defense counsel ob-

jected. He was sustained, the jury was instructed to disregard the statements, and motion for mistrial was overruled.

Next, the prosecutor during closing argument attempted to apologize to the jury because of the offensiveness of the testimony that they had to hear since the case was more like a rape case than a burglary case. The argument went outside of the record and defense counsel objected; he was sustained, and the jury was instructed to disregard the statements. A motion for mistrial was again overruled.

Finally, the prosecutor, during closing argument, offered his apology to the jury "--- because you had to sit there and listen to a bunch of perverted facts, twisted lies and innuendos and implications not brought on by the attorneys, not brought on by the court ----." The clear implication of this statement was that the appellant personally, and no one else, was guilty of such misconduct. Defense counsel's objection was overruled. The prosecutor then proceeded to call the appellant an animal. Upon objection, the Court instructed the jury to disregard classifying the defendant as anything other than a human.

The majority in its opinion has considered each of these errors as harmless or not reversible error. I strongly disagree with that opinion and disagree that the authorities cited are in support of it.

A review of the prosecutor's argument indicates that he continuously injected extraneous matters into his argument and repeatedly gave the jury his own personal opinions. All too frequently, after an objection to his argument was sustained, he would flagrantly continue with further objectional argument. I suspect that on many occasions no objection was made in the fear, perhaps, that to do so would only emphasize the improper remarks or prejudice appellant in the eyes of the jury by over objecting. The reference to the use of the polygraph test was clearly improper and the impression which had to be left with the jury was that the police officer had verified the complainant's story through some means, and that means was

a polygraph test. There are instances where curative instructions by the court do not negate the prejudicial effect of argument. This is such a case. The prosecutor's cumulative misbehavior was of such an extreme nature that any instructions to the jury could not effectively have remedied the damage. This misconduct was so pronounced and persistent that it permeated the entire atmosphere of the trial. The prosecutor's argument before the jury was error ridden and prejudicial, and the instructions given by the court to the jury did not remove the taint and harm created by the argument. No amount of instructions from the court could have done so. Repeated violations by the prosecutor placed the defendant in the difficult position of having to make constant repeated objections or otherwise suffer a waiver of any claim of error. *Brown v. Estelle*, 468 F.Supp. 42 (N.D.Tex.1978), *aff'd* 579 F.2d 1207 (5th Cir.1979); *Washington v. State of Texas*, 668 S.W.2d 715 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd).

I have no doubt that the State prosecutor recognized few, if any, limits on his forensic conduct. Under a duty to seek justice, the prosecutor recognized only a duty to seek victory. Both State and Federal law governing the limits of proper argument find their source in notions of fairness, the same source from which flows the right to due process of law. Moreover, repeated violations of a state law standard, even where that standard is not constitutionally compelled, may in the circumstances of a particular case produce a due process violation because of the prejudicial effect of requiring the defense to continually assert objections or suffer deprivation of a right under state law. The very repetition of the improper argument, moreover, had a corollary effect. We are aware, of course, that a defect of constitutional proportions is not to be found in any but egregious cases. I think this is such a case. I would hold that the appellant was denied a fundamentally fair trial, not that prosecutorial remarks of the character quoted necessarily constitute a due process violation. I am convinced beyond doubt that the prosecutor overstepped the norms of decency in prosecu-

tion, fairness in presentation, and truthfulness in argument. In view of the severity of the sentence, it appears that the jury could not weigh all of the admissible evidence fairly in light of all the improper statements that were made during trial. While it is true that the trial judge instructed the jury to disregard the polygraph test, the hearsay testimony, and prosecutor's improper remarks, such curative instructions did not adequately negate the impact. Such curative instructions are a device to be employed and the utility of which is to be respected. Nonetheless, we are convinced that in the circumstances of this case, this mild cure was insufficient to purge the taint. The constitutional frontier stands very far indeed from the core of good prosecutorial practice. But even the wide open spaces within constitutional bounds are not sufficient range for some prosecutors. A public prosecutor wields the sword of justice. It is his duty to recall that this sword, though forged in the flame-heat of zeal, is alloyed with the iron of restraint. The prosecutor in this case forgot this fundamental truth. As a result, George Arnold Giesen was not afforded that fundamentally fair trial to which he was entitled by law. *Houston v. Estelle*, 569 F.2d 372 (5th Cir.1978).

Therefore, I would reverse and remand for a new trial.