**Ronnie Edward REED, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 49863.**

Court of Criminal Appeals of Texas.

May 7, 1975.

Ralph Taite, Dallas, for appellant.

Henry Wade, Dist. Atty., Gary Love and Gerald Banks, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for robbery by assault with a firearm,

where the jury assessed the punishment at fifteen (15) years' confinement in the Department of Corrections.

Sherelle Henderson, an employee of Lowe's Bar-B-Q in Dallas, testified that on Saturday, September 29, 1973, about 11 p. m., the appellant and one Ernest Smith, also known as "Dirty Red," entered the business establishment. After ordering sandwiches, Smith came behind the counter, pulled a gun and said, ". . . this is a stick up." She related the appellant also displayed a gun. She gave Smith the money and both men left.

Yolanda Lewis, another employee, corroborated witness Henderson's testimony and related appellant, whom she knew, pointed a gun at her and told her to walk to the counter and remained near the door until Smith yelled, "Let's get out of here."

Appellant testified he left Dallas in July 1973, and went to California and remained there until he was arrested in November, 1973, and extradited to Texas. His mother supported his alibi testimony.

In rebuttal at the guilt stage of the trial the State called Don E. McElroy, a Dallas City Police Officer, who testified that he knew the appellant and pointed him out. The record then reflects:

"Q  You're referring to the black male sitting at the end of the Counsel table?

"A  Yes, sir.

"Q  Okay. Mr. McElroy, how are you employed?

"A  I'm assigned to the Physical Evidence Section.

"Q  All right, and what is your primary duty with the Physical Evidence Section?

"A  I'm a polygraph examiner.

"Q  I will ask you whether or not you know the Defendant—you've talked to other people regarding—

"MR. TAITE: May we approach the bench?

"THE COURT: Yes, sir.

"(Whereupon a discussion was had outside the hearing of the Reporter and the jury after which the following proceedings were had in the presence and hearing of the jury:)

"MR. TAITE: Your Honor, at this time the Defendant would object to the last question and answer of the officer, McElroy, and would ask that the jury be instructed to disregard that answer and consider it for no purpose at all.

"THE COURT: Members of the jury —your objection is sustained.

"Members of the jury, disregard the last question and answer of this witness, please, and do not consider it for any purpose in this trial.

"MR. TAITE: At this time the Defendant makes a motion for a mistrial, contending to the Court that the mere statement of what Mr. McElroy does, whether it has anything to do with this case or not is of such a prejudicial nature to the Defendant it cannot be cured by any instruction to the jury.

"THE COURT: Overruled.

"MR. TAITE: Note our exception.

"Q  (By Mr. Adams): Mr. McElroy, you stated you know the Defendant in this case, is that correct?

"A.  Yes.

"Q  Have you talked to other police officers and civilians about the Defendant's reputation for being a truthful person in the community in which he resides?

"A  Yes.

"Q  Does that reputation entitle him to belief under oath?

"A  No.

"MR. ADAMS : No further questions."

It should be observed that no testimony was elicited before the jury that the witness had given a lie detector test to the appellant, and the results of any such test were not mentioned.

In his first ground of error appellant contends he was denied a fair trial when Officer McElroy testified he was a polygraph operator.

■ It has been the consistent holding of this court that evidence of the *results* of a lie detector or polygraph machine is not admissible in evidence on behalf of the State or the defense. Romero v. State, 493 S.W.2d 206, 210 (Tex.Cr.App.1973), and cases there cited. See also Lee v. State, 455 S.W.2d 316, 321 (Tex.Cr.App.1970) ; Renesto v. State, 452 S.W.2d 498, 500 (Tex. Cr.App.1970).

Hart v. State, 447 S.W.2d 944 (Tex.Cr. App.1969), involved a situation somewhat similar to the one at bar. There, the prosecutor asked the officer witness by whom he was employed, "without going into detail as to his line of work." The witness responded, "Fort Worth Technician Department, Crime Lab., Polygraph Examiner." No objection was made, but shortly thereafter the jury was removed and the witness was instructed not to mention "lie detector" or "polygraph" again in his testimony. The defendant relied for error on his motion in limine. In affirming the conviction this court observed that it did not appear the witness alluded or referred to any examination given the appellant or anyone connected with the trial or the results of any such tests.

In Hannon v. State, 475 S.W.2d 800 (Tex.Cr.App.1972), a burglary prosecution, the fruits of the crime were found in the witness Jordan's house after she consented to a search. Appellant was there at the time. Jordan related appellant and one Willis had brought the goods to her house. On cross-examination she was asked if she had gone to the police station and talked to them of her own free will. She related that she had gone to see her brother and Lt. Sinclair had questioned her with her consent, and "he put her on the lie detector test." The objection was sustained and the jury instructed to disregard. The mistrial motion was overruled. The results of the test were not mentioned. There, the court held there was no error.

In Renesto v. State, supra, the State's witness Dulaney was asked if on the day following the offense he had gone anywhere with a Ft. Worth police officer. He replied, "Well, I went down town at 8 o'clock in the morning and took a polygraph test." The objection was sustained and a jury instruction was given. The results of the test were not mentioned. This court held that no error was presented.

In Paredes v. State, 368 S.W.2d 620 (Tex.Cr.App.1963), no error was shown in the non-responsive answer of the officer witness that he had taken the accused "to a polygraph machine," where the record did not indicate a test had been given or, if given, the results thereof. Further, in Roper v. State, 375 S.W.2d 454 (Tex.Cr.App. 1964), no reversible error occurred where the officer stated unresponsively that the defendant had been subjected to a polygraph test, and the results of the test were not revealed and the jury was instructed to disregard.

In Lee v. State, 455 S.W.2d 316, 321 (Tex.Cr.App.1970), the sheriff on direct examination related the morning following the defendant's arrest he was taken before a second magistrate. When asked if he was present when that magistrate gave the warning, he replied, "Yes, sir. It was a warning that he didn't have to take a lie detector—." The prosecutor responded, "—just—Shh—shh—shh—." The court sua sponte instructed the jury to disregard, but

**469**

overruled the mistrial motion. This court, citing *Paredes* and *Roper,* found no error was reflected.

█ In all the cases cited above, from *Hart* through *Lee,* the answer given was not responsive. In the instant case the answer to the question as to the witness' primary duty with the Physical Evidence Section was responsive when he said, "I'm a polygraph examiner." However, the court instructed the jury to disregard the last question and answer, no evidence that any polygraph test had been given was offered before the jury, and the results of any such test were not mentioned. The questions propounded to the witness after the jury instruction and overruling of the mistrial motion were limited to his discussion with "other police officers and civilians about the Defendant's reputation for being a truthful person . . . ." His answer was "that" reputation did not entitle him to belief under oath.

Under the circumstances, we deem the above cited cases controlling and do not conclude that reversible error is shown.

Appellant relies upon Nichols v. State, 378 S.W.2d 335 (Tex.Cr.App.1964), for the proposition that reversal is called for in some cases even if the *results* of a lie detector test are not mentioned. In *Nichols,* the 14 year old prosecutrix in a statutory rape case was asked on re-direct examination:

"Q: Without telling me the results, did you take a lie dector test about this?

"MR. MABRY: (Appellant's counsel) I object—

"A: (By witness) Yes sir."

The objection was sustained, and the jury instructed to disregard. The court did not rule on the mistrial motion.

In reversing, the court concluded the elicited testimony was equivalent to revealing the results. The majority opinion stated:

". . . The state not only inquired about a test, the results of which were not admissible, but when it asked the question and received an affirmative reply it no doubt very effectively bolstered the prosecutrix's testimony before the jury. This, we think was highly prejudicial to the rights of appellant, and the harm done was so great that no instruction from the court could remove it. *This testimony in effect revealed the results of the lie detector test and this was inadmissible.* The jury no doubt were (sic) convinced that the Assistant District Attorney knew the prosecutrix had taken and passed the test. . . ." (Emphasis Supplied)

Appellant calls attention in the instant case to the fact that after the State had completed its interrogation of the witness McElroy in the absence of the jury it was developed that the witness McElroy had administered a lie detector test to the appellant around April 12, 1974, a little more than a month before trial. Although the prosecutor was not called to determine if he knew that such a test had been given, the appellant argues that it is obvious that the prosecutor knew and deliberately elicited the complained of answer for the inference it would leave with the jury. Since the witness had testified he was a Dallas Police Officer and was assigned to the Physical Evidence Section, the question as to his primary duties was unnecessary and should not have been asked. We cannot conclude, however, that the circumstances call for reversal or that *Nichols* controls. In *Nichols,* the prosecutor actually elicited the fact that such a test had been given, where in the instant case there was no showing before the jury that any test was ever given and no mention was made of the results of any such test. The complained of question and answer as to the witness' primary duties were withdrawn

from the jury's consideration at the court's instruction, and it appears the witness' reputation testimony was clearly based upon his conversation with officers and others. Without the complained of question and answer, we do not see how an attack could be made upon the witness' testimony. In light of the court's prompt instruction to disregard the complained of question and answer, no reversible error is presented.

■ Appellant also contends the "evidence is insufficient to support the verdict." As we view the evidence described above in the light most favorable to the verdict, it is sufficient to support that verdict. Appellant argues the testimony of Sherelle Henderson and Yolanda Lewis was inconsistent as to identification. Apparently appellant relies upon the fact that Officer Peavy testified he showed a total of six photographs to the two witnesses and Sherelle Henderson testified the officer showed her 19 or 20 photographs, and Yolanda Lewis testified she was shown as many as 50 photographs. This testimony was elicited at a separate hearing in the absence of the jury to determine the admissibility of the in-court identification. See Martinez v. State, 437 S.W.2d 842 (Tex.Cr.App.1969). At the conclusion of the hearing the court found that the identification testimony was based on independent observations of the witnesses at the time of the offense and was not tainted by the photographic display.

During the trial on the merits the State elicited from Officer Peavy that he had shown six photographs to the witnesses, and the appellant elicited from Yolanda Lewis that the officer had shown her some pictures and she could not say exactly how many, though she admitted she had said 50 pictures at the earlier hearing. Any inconsistency was for the jury, and does not render the verdict unsupported by the evidence.

The judgment is affirmed.