**Frank BANDA, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–86–139–CR.**

Court of Appeals of Texas,
Austin.

March 4, 1987.

Rehearing Denied April 15, 1987.

Marvin C. Hanz, San Angelo, for appellant.

Gerald Fohn, Dist. Atty., Steve Lupton, Asst. Dist. Atty., San Angelo, for appellee.

Before SHANNON, C.J., and BRADY and CARROLL, JJ.

BRADY, Justice.

Appellant was convicted in a jury trial of the offense of indecency with a child and sentenced to twenty years. In this appeal appellant presents four points of error asserting that: 1) disclosure to the jury that the complaining witness passed a polygraph examination was so highly prejudicial that a new trial should be ordered; 2) the trial court should have granted a new trial after the prosecutrix retracted her testimony; 3) it was error to not appoint legal counsel to represent the prosecutrix;

and 4) the trial court allowed improper jury argument. We affirm.

The challenged polygraph evidence was elicited in the State's cross-examination of Patsy Luna. Ms. Luna had been called by the defense to impeach the truthfulness of the complaining witness. On direct examination by defense counsel, Ms. Luna stated that "I wouldn't believe her under oath." On cross-examination, the State inquired about another witness who apparently had initial doubts concerning the credibility of the prosecutrix and the following exchange occurred:

Q. Okay. And at that time had he already changed his opinion and his opinion was that B___ was being absolutely honest?

A. No, he did not. He said he was not going to change his opinion until she took a lie detector test.

Q. Do you know whether she took the lie dectector [sic] test?

A. Yes, she did.

Q. Are you aware that she passed the lie detector test?

MR. HANZ: Please the court, I'll object—

THE WITNESS: Yes.* [1]

At this point in the trial, a brief debate transpired before the jury concerning the admissibility of the polygraph evidence. During this discussion, the court stated it would sustain an objection concerning the results of the test. Appellant moved for a mistrial and the court overruled that motion. The jury was then retired.

In the bench conference that followed, the court granted a motion to strike the testimony concerning the polygraph exam. The court also expressed a desire to minimize any harm by not emphasizing the evidence before the jury. Defense counsel was then asked by the trial judge what sort of action the court should take:

THE COURT: ... If you want me to instruct the jury to disregard her question and answers concerning any lie detector test; is that what you want?

MR. HANZ: Yes Ma'am.

THE COURT: Is that what you want me to say to them? Okay. You may bring in the jury.

Upon their return, the jury was promptly instructed to disregard the last two questions and any responses concerning the examination because that evidence was inadmissible. No objection was made to this instruction. Appellant now contends a mistrial should have been granted.

█ Because of its inherent unreliability and its tendency to be unduly persuasive, the results of a polygraph examination are not admissible in Texas for any purpose. *Nethery v. State,* 692 S.W.2d 686, 700 (Tex. Cr.App.1985); *Fernandez v. State,* 564 S.W.2d 771, 773 (Tex.Cr.App.1978); *Robinson v. State,* 550 S.W.2d 54, 61 (Tex.Cr. App.1977); *Romero v. State,* 493 S.W.2d 206, 213 (Tex.Cr.App.1973). While recognizing the polygraph evidence was inadmissible, the State asserts any undue prejudice was removed from the jurors' minds by the trial judge's prompt limiting instruction. The State further contends that, in any event, the error was waived because the defense failed to object upon the initial reference to the polygraph results. We agree with both contentions.

█ Where the defense insists on a mistrial, the sufficiency of an instruction to disregard polygraph evidence generally depends on whether the results of the exam were revealed to the jury. In all cases we found where an instruction to disregard was held sufficient, lie detector evidence was only mentioned and no results were disclosed. *See e.g. Reed v. State,* 522 S.W.2d 466 (Tex.Cr.App.1975) (testimony that witness was a polygraph examiner); *Hannon v. State,* 475 S.W.2d 800, 803 (Tex. Cr.App.1972) (witness stated he had been put on the lie detector); *Renesto v. State,* 452 S.W.2d 498, 500 (Tex.Cr.App.1970) (un-

---

1. The asterisk refers the reader to a foot note at the end of the statement of facts which reads as follows:

   Due to the simultaneous answer of the witness and objections by counsel to the question ... this reporter could not report the response ... However, upon transcription and while listening to the audio backup, this response ... was heard and is now a part of the record.

responsive answer that witness had taken a polygraph); *Lee v. State,* 455 S.W.2d 316, 321–2 (Tex.Cr.App.1970) (revelation "that he [the defendant] did not have to take the lie detector"); *Charles v. State,* 424 S.W.2d 909, 913 (Tex.Cr.App.1967) (statement that two persons submitting to investigation had been tested); *Roper v. State,* 375 S.W.2d 454, 457 (Tex.Cr.App.1964) (disclosure that test given to defendant); *Paredes v. State,* 368 S.W.2d 620, 621 (Tex.Cr.App. 1963) (statement that defendant was taken to a polygraph machine); *Giesen v. State,* 688 S.W.2d 176, 178 (Tex.App.1985, no pet.) (testimony that rape prosecutrix normally given polygraph exam). Conversely, in all cases where the results were made known to the jury over objection, the prejudice was held to be irreversible and a new trial imperative. *See e.g. Robinson, supra; Nichols v. State,* 378 S.W.2d 335, 338 (Tex. Cr.App.1964); *Jones v. State,* 680 S.W.2d 499, 502 (Tex.App.1983, no pet.).

▪ Despite the fact that the results of the polygraph exam were revealed in this case, we find the trial court's instruction to disregard sufficient because it was the relief requested by defense counsel. The Court of Criminal Appeals notes that in *Nichols, supra,* an inferential revelation to the jury that a statutory rape prosecutrix had passed a lie detector exam was held to be so "highly prejudicial to the rights of the appellant, and the harm done, was so great that no instruction from the court could remove it." *Id.* at 337. The case at bar, however, differs significantly from the situation in *Nichols,* because here defense counsel indicated it would be satisfied with an instruction. Although an initial motion for mistrial was presented and overruled, that motion was not renewed when counsel was asked by the court if an instruction to disregard would be sufficient. Because the defense did not request a mistrial when asked what remedy it desired, it cannot now change its position.

▪ We also find the admission of the lie detector results was waived because they were already in evidence at the time defense counsel objected. In *Nichols, supra,* the results of the test were held to have

been disclosed, not by an affirmative statement of a witness, but merely by a question revealing that a lie detector exam had been administered. The *Nichols* court quoted the actual trial testimony as follows:

> Q. "Without telling me any results, did you take a lie detector test about this?"
>
> Mr. Marbry: (Appellant's counsel) "I'll object—"
>
> A. "Yes, Sir."
>
> Mr. Marbry: "—to this and ask for a mistrial. A lie detector is not introducible in evidence."
>
> THE COURT: "Sustain the objection, and the jury will not consider that for any purpose whatsoever."

*Id.* at 336. The *Nichols* court held that "This testimony in effect revealed the results of the lie detector test ..." *Id.* at 337.

In the instant cause, we find that the results of the exam were revealed to the jury in the same manner as in *Nichols.* Had there been an objection made upon the first reference revealing the results of the lie detector exam, we would be constrained to follow the *Nichols* decision and order a new trial. However, because there was no objection at that time, any error was waived.

▪ Appellant's second point of error asserts that a new trial should have been granted upon the complaining witness' retraction of her testimony. An order denying a motion for new trial may only be reversed on appeal when there was a clear abuse of the trial court's discretion. *Wilson v. State,* 445 S.W.2d 213, 216 (Tex.Cr. App.1969). Here, the motion was based on the prosecutrix's affidavit stating her trial testimony was untrue. Even where a recantation of testimony is made by the principal witness, a trial court is entitled to disbelieve that later statement and accept the earlier testimony as true. *Williams v. State,* 375 S.W.2d 449, 452 (Tex.Cr.App. 1964). We will not second guess the trial court's judgment concerning the credibility of the witnesses before it; hence, we find no abuse of discretion.

In his third point of error appellant contends the trial court's failure to appoint legal counsel to represent the complaining witness was reversible error. Counsel cites no authority to support this assertion and we have found none. Indeed it appears from the transcript that during the trial court's plenary jurisdiction over the judgment, counsel was eventually appointed for that witness. Because there is no showing how, if at all, the appellant was harmed by the trial court's initial refusal to appoint counsel, we find no error in that action.

Appellant's final point of error complains of improper jury argument. An examination of the record reveals several instances where the State's attorney attempted to argue facts and opinions outside the record. Each time this argument was met with a prompt objection and a limiting instruction was secured from the trial judge. Because no motion for mistrial was made, the trial court's instruction to disregard cured any error. *Miller v. State*, 566 S.W.2d 614, 619 (Tex.Cr.App.1978).

The judgment of the trial court is affirmed.